**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **WILLIAM E. LEE, JR.** | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL NO. PWG-07-3076 |
| | : | |
| v. | : | |
| | : | |
| **MICHAEL J. ASTRUE** | : | |
| COMMISSIONER, | : | |
| SOCIAL SECURITY ADMINISTRATION | : | |
| | : | |
| Defendant | : | |

**M E M O R A N D U M**

**I. Background**

William E. Lee, Jr., sometimes referred to as "Claimant" or "Mr. Lee," brought this action under 42 U.S.C. § 405(g) requesting review of the final decision by the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383. Before this Court, by their consent, are the parties' cross-motions for Summary Judgment. (Paper Nos. 9, 14, 21). No hearing is necessary. Local Rule 105.6. For the reasons set forth below, this case will be remanded to the Commissioner for further administrative proceedings.

Mr. Lee filed applications for DIB and SSI benefits on February 3, 2003, alleging that he became disabled as of February 10, 1997 due to arthritis in his lumbar spine, knees, osteoarthritis of the hips and shoulders, degenerative joint disease of the ankles, major depression, and an

anxiety disorder.  (Tr. 108-110, 123, 139,164.[1]) .  Mr. Lee's claim was denied initially and upon

reconsideration.  (Tr. 95-101).  The Claimant filed a timely request for a hearing before an

Administrative Law Judge ("ALJ").  On December 31, 2005, a hearing was held before The

Honorable Charles Center ("ALJ Center").  (Tr. 42-70.)   However Judge Center left the Social

Security Administration prior to issuing a decision.  Therefore a second hearing was held on July

27, 2006 before ALJ Douglas Due.  (Tr. 71-94.)   In a decision dated January 16, 2007, the ALJ

found Mr. Lee was not disabled.  (Tr. 22).  The Appeals Council denied Claimant's request for

review on September 28, 2008, making the ALJ's decision the final, reviewable decision of the

Commissioner.  (Tr. 5-7.)

## II. <u>Standard of Review</u>

The role of the Court in reviewing Mr. Lee's claim is not to perform a *de novo* review or

to reweigh the evidence on record.  *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).

Instead, the standard of review to be applied in this case is to determine whether the

Commissioner's decision is, upon review of the entire record, supported by substantial evidence

and a proper application of the law.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990);

*Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); 42 U.S.C. §§ 405(g), 1383(c)(3).

Substantial evidence is more than a scintilla but less than a preponderance of the evidence

presented.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  Substantial evidence is that

which a reasonable mind might accept as adequate to support a verdict were the case before a

jury.  *Johnson v. Califano*, 434 F. Supp. 302, 307 (D. Md. 1977).  If there is substantial evidence

to support the Commissioner's decision, ordinarily the decision must be upheld.  *Cook v.

Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th

---

[1] "Tr." refers to the administrative hearing transcript, medical records, and assorted documents
that comprise the entire record pertaining to this case.

Cir. 1972); 42 U.S.C. §§ 405(g), 1382(c)(3).

In addition to reviewing the ALJ's decision to determine if it is supported by substantial evidence, this Court must also determine whether the ALJ properly applied the law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman*, 829 F.2d at 517. After reviewing the ALJ's decision, this Court may affirm, modify, or reverse the decision of the ALJ and may remand the case for rehearing. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *Coffman*, 829 F.2d at 519; *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971); 42 U.S.C. §§ 405(g), 1383(c)(3).

In determining whether a claimant is disabled within the meaning of SSI, the Commissioner has promulgated regulations that set forth a five-step sequential evaluation procedure. *See* 20 C.F.R. § 416.920(a). This five-step process, described by the Supreme Court in *Bowen v. Yuckert*, 482 U.S. 137 (1987), begins with the ALJ determining whether the claimant is engaged in substantial gainful activity, which is defined for SSI claims in 20 C.F.R. § 416.971 *et seq*. If the claimant is engaged in a substantial gainful activity, the claimant is not considered disabled. 20 C.F.R. § 416.920(a). If the claimant is not engaged in substantial gainful activity, the ALJ next examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. §§ 416.909 and 416.920(c).

If the durational and severity requirements are met, the ALJ's analysis proceeds to a third step—a consideration of whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is known as the Listing of Impairments. If one of the Listings is met, disability will automatically be found without consideration of age, education, or work experience. If a Listing

is not met, however, the ALJ moves to a fourth step and considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work.  If the ALJ finds that a claimant retains the residual functional capacity to perform past relevant work, claimant will be found to be not disabled.

If a determination is made that the claimant is not capable of performing his or her "past relevant work" the ALJ moves to a fifth step and considers whether, based upon the claimant's residual functional capacity, age, education, and past work experience, the claimant is capable of some other work.  At this step the burden shifts to the Commissioner.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  If the claimant suffers solely from exertional impairments,[2] the Medical-Vocational guidelines, as defined in Part 404, Subpart P, Appendix 2 (the "Guidelines"), provide rules to be applied in determining whether a claimant is disabled.  An ALJ, in applying the Guidelines, will examine the claimant's age, education, work experience, and residual functional capacity to determine which rule applies.  The rule will direct a conclusion as to whether a claimant is disabled.

The Guidelines, however, will not be used when the claimant suffers from both exertional and non-exertional impairments.  In such a case, the ALJ is required to employ the use of a vocational expert to determine whether the claimant is still capable of some work.  If the claimant is not capable, disability will be found.

---

[2] Impairments may be exertional and non-exertional.  An exertional limitation is one that affects the claimant's ability to meet the strength demands of certain jobs.  20 C.F.R. § 416.969a(b).  A non-exertional impairment is a "limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not."  *Gory v. Schweiker*, 712 F.2d 929, 930 (4th Cir. 1983).  "[W]here the claimant's impairment is non-exertional—not manifested by a loss of strength or other physical ability—or is marked by a combination of exertional and nonexertional impairments, the grids' Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case."  *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983).

### III. The ALJ's Decision

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through March 30, 2000.

2. The claimant has not engaged in disqualifying substantial gainful activity since February 10, 1997, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease, bilateral osteoarthritis of the hips, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1524, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 20 pounds occasionally, 10 pounds frequently, stand/walk no more than 2 hours in an 8 hour workday; no more than occasionally climb, balance, stoop, kneel, crouch, or crawl; he requires the ability to alternate sitting and standing every 20 minutes; have no more than occasional interaction with co-workers and supervisors, and no contact with the general public.  He is limited to simple one to two step tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 2, 1969 and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from February 10, 1997 to the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24-27).

## IV.  **Summary of Evidence**

Mr. Lee was born April 2, 1969, has a tenth-grade education, and was enrolled in special education programs.  (Tr. 45, 296.)  Mr. Lee's past relevant work includes work as a furniture mover, carpentry worker, courtesy clerk, fast-food worker, and dishwasher.  (Tr. 52, 65.)  Mr. Lee claims that he has been disabled since February 10, 1997 due to arthritis and depression.  (Tr. 97.)  Mr. Lee claims that he suffers from the following impairments: arthritis of the lumbar spine, arthritis and post-traumatic arthritis of the knees, osteoarthritis of the hips and shoulders, degenerative joint disease of the ankles, major depression, and anxiety disorder.  (Tr. 24, 123, 139).

Mr. Lee received medical treatment at several health facilities.  From May 2000 to February 2006, he was treated at the Walnut Street Community Health Center, where he was diagnosed with severe degenerative disease and osteoarthritis affecting his hips, knees, and ankles.  (Tr. 221-243, 280).  At Mr. Lee's initial examination by Dr. Sandra Fowler in May 2002, Mr. Lee complained of pain in his ankles, shoulders, and lower back.  (Tr. 354)  Dr. Fowler diagnosed Mr. Lee with osteoarthritis and prescribed him Celebrex and Darvocet "for severe pain" and Prozac.  (Tr. 354).  At his July 2002 examination by Dr. Fowler, Mr. Lee complained of pain in his spine, knees, and ankles and the doctor noted that Mr. Lee was suffering from arthritis and symptoms of "depression/anxiety."  (Tr.  241).

In December 2004 Mr. Lee began treatment with Dr. Laura Asher at the Walnut Street Community Clinic for his arthritis.  (Tr. 339).  Dr. Asher prescribed Mr. Lee Relafen, Vicodin, and MS Contin, and continued to treat Mr. Lee through January 2007.

Mr. Lee was also treated by Dr. Fowler and other physicians at Robinwood Specialists, P.A., from June 2002 to June 2003.  (Tr. 157-63, 244-45, 248-50.)  In June 2002, Dr. Fowler examined Mr. Lee for injury to his left knee sustained after an altercation with burglars in his apartment.  (Tr. 244).  Dr. Fowler noted that Mr. Lee had a bipartite patella confirmed by x-ray, "contusion of the left patellar body," and lacerations to his head.  (Tr. 245).

In September 2002, Dr. Winslow of Robinwood Orthopedic Specialists examined Mr. Lee and diagnosed him with "bilateral foot pain with x-ray evidence of arthritis," a bipartite patella of the left knee, moderate osteoarthritis in his right hip and mild arthritis in his left hip, and a history of scoliosis.  (Tr. 158. ).  Dr. Lee's diagnosis was moderately severe osteoarthritis of the right hip and mild osteoarthritis of the left hip, mild patellofemoral syndrome of his left knee with a history of bipartite patella, and "bilateral severe talonavicular joint arthritis with incomplete tarsal coalition."  (Tr. 157).

From January 2001 to March 2005, Mr. Lee was treated at The Mental Health Center in Hagerstown, Maryland. (Tr. 190-92, 214-20, 261-69).  He was initially diagnosed with PTSD, major depression, a history of polysubstance abuse, and an antisocial personality disorder; he was prescribed Zoloft and counseling.  (Tr. 269). In December 2000 Dr. Anton diagnosed Mr. Lee with bipolar disorder and PTSD and assessed Mr. Lee a GAF score ranging between 55 and 60.  (Tr. 261-267)  Dr. Anton prescribed Mr. Lee Prozac, Paxil, and Remeron, but after finding them ineffectual switched Mr. Lee to Effexor and Zyprexa.  (Tr. 165-66, 262-64).  In December 2003, Dr. Anton noted that Mr. Lee's PTSD was "in remission."  (Tr. 261).  In April, 2004 Dr. Anton noted that Mr. Lee "feels better," and in June 2004 noted that Mr. Lee was "satisfied with meds on morphine for pain" and had "no side effects."  (Tr. 267, 268).

On April 9 2003, state agency physician, Dr. "X"[3], completed a Physical RFC

Assessment  (Tr. 186-89).  Dr. X. stated that Mr. Lee could occasionally lift or carry 20 pounds,

frequently lift or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and

had no limitations in his ability to push and/or pull other than as limited by his ability to lift

and/or carry, and he could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and

crawl. See Exhibit 5-F  (Tr. 187-188).

In May 2003, Mr. Lee underwent a consultative psychiatric examination with Dr. Rose

Gustilo.  Dr. Gustilo noted that Mr. Lee had a depressed mood, impaired judgment, and limited

insight.  (Tr. 168).  She diagnosed Mr. Lee with "Major Depression, recurrent, severe," "Anxiety

Disorder, NOS," and "Poly Substance Dependency by history"  and  she assessed Mr. Lee's

GAF score as 50.  (Tr. 169).

On June 2, 2003, Dr. Patrick Sokas completed a Psychiatric Review Technique Form

"PRTF" and a Mental Residual Functional Capacity Assessment Form ("MRFCA").  (Ex. 4F; Tr.

177-184).   Dr. Sokas noted that Mr. Lee exhibited depressive syndrome and "anxiety disorder,

NOS."  (Tr. 176-77).   Dr. Sokas determined that Mr. Lee was "moderately limited" in his

ability to "understand and remember detailed instructions," "carry out detailed instructions,"

"maintain activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances," "complete a normal day and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods," "accept instructions and respond appropriately to criticism

from supervisors," and "get along with coworkers or peers without distracting them or exhibiting

behavioral extremes."  (Tr. 181-82).  In all other areas of the assessment, Dr. Sokas determined

that Mr. Lee was "not significantly limited."  (Tr. 181-82).

---

[3] This state agency physician is not identified in the record in any manner other than as Dr. X.

Regarding Mr. Lee's functional limitations, Dr. Sokas determined that Mr. Lee was "moderately" limited in "Activities of Daily Living," "Difficulties in Maintaining Social Functioning," and "Difficulties in Maintaining Concentration, Persistence, or Pace."  (Tr. 178).  Dr. Sokas also found that Mr. Lee had experienced "one or two" "Episodes of Decompensation, Each of Extended Duration."  (Tr. 178).

On January 6, 2004, Dr. J. J. Kowalski completed a PRTF and MRFCA.  (Ex. 7F; Tr. 193-203.  Dr. Kowalski determined that there was "no evidence of limitation" regarding Mr. Lee's ability to "remember locations and work-like procedures" and "understand and remember very short and simple instructions."  (Tr. 195).  Dr. Kowalski stated Mr. Lee was "moderately limited" in his ability to "carry out detailed instructions," "perform activities within a schedule, maintain a regular attendance, and be punctual within customary tolerances," and "respond appropriately to changes in the work setting."  Dr. Kowalksi found Mr. Lee to be "not significantly limited" in all other areas of assessment.(Tr.  195-196).  Dr. Kowalski determined that Mr. Lee can "follow instructions and is capable of performing routine, non-complex tasks." (Tr. 197).

Regarding Mr. Lee's functional limitations, Dr. Kowalski stated Mr. Lee's limitations were "mild" in "Activities of Daily Living," and "Difficulties in Maintaining Social Functioning."  (Tr. 201).  Dr. Kowalski also found "moderate" limitations with respect to "Difficulties in Maintaining Concentration, Persistence, or Pace " but experienced "no" episodes of decompensation of extended duration.  (Tr. 201).

On August 29, 2006, Dr. Daniel J. Freedenburg performed a consultative psychiatric examination of Mr. Lee.  (Tr. 295-304).  Dr. Freedenburg noted that Mr. Lee had a history of marijuana and cocaine use and that he was being treated with Effexor and Zyprexa for

depression and morphine and Vicodin for pain management.  (Tr. 295, 296, 298).  Dr.

Freedendburg diagnosed Mr. Lee with bipolar disorder and major depression, but noted that his

diagnosis could not be affirmed "so long as [Mr. Lee] is abusing drugs or receiving excessive

amount [sic] of doctor prescribed narcotics."  (Tr. 299).  Dr. Freedenburg could not assess Mr.

Lee's highest level of functioning because he believed that Mr. Lee had "apparently scripted" his

responses and had presented himself "as being more psychiatrically impaired than he is" and that

Mr. Lee "does not appear to have a disabling medical condition." (Tr. 299).

On September 2, 2006, Dr. Seth Tuwiner performed a consultative physical examination

of Mr. Lee.  (Tr. 285-94).  Dr. Tuwiner diagnosed Mr. Lee with back, knee, and hip pain due to

arthritis, osteoarthritis, post-traumatic arthritis, and possible radiculopathy.  (Tr. 287).  Dr.

Tuwiner noted that Mr. Lee received pain management for his conditions and determined that the

prognosis for these ailments was "fair."  (Tr. 286, 287-88).  Dr. Tuwiner completed a Medical

Source Statement and stated that due to his hip and knee arthritis,  Mr. Lee could lift 30 pounds

occasionally and 10 pounds frequently, could stand or walk for about 6 hours in a workday had

limited ability to push/pull in his lower extremities and could "never" perform postural activities

such as climbing balancing kneeling crouching crawling or stooping.  (Tr. 292).

## V.  <u>Analysis</u>

Mr. Lee presents several arguments in support of his contention that the

Commissioner's decision is not supported by substantial evidence and should be reversed or, in

the alternative, remanded for a new hearing.  For the reasons that follow I agree with some of

Mr. Lee's arguments[4] and I am remanding this case for further administrative proceedings.

---

[4] There is evidence in this case -- submitted by Claimant after the date of the ALJ's decision -- which was accepted
and made a part of the record by the Appeals Council. As discussed *infra*, I am remanding this case for further
consideration. Accordingly on remand, the ALJ will have the opportunity to review, consider, and adequately
discuss the weight given to this additional evidence. (Tr. 8-9, 311-381).

<u>The ALJ failed to discuss whether Mr. Lee's Anxiety disorder was a severe impairment at step two.</u>

The Claimant argues that the ALJ failed to consider all of Mr. Lee severe impairments at step two of the five-step sequential evaluation and therefore did not properly evaluate Mr. Lee's residual functional capacity ("RFC"). See Pl. Mot. 7. Specifically, Mr. Lee claims that the ALJ failed to identify his anxiety disorder as a "severe" impairment.

When a claimant alleges disability due to a mental condition, the Commissioner **must** follow a special technique set forth in 20 CFR § 404.1520a, and the Listing of Impairments (*Mental Disorders 12.00*)(emphasis added). After review of the ALJ's decision, it is apparent that the requisite analysis was not documented properly in this case. There is no discussion documenting the application of the technique and/or the ALJ's own specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph (c) of 404.1520a: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation despite the regulatory to make specific findings as to the degree of limitation in each of the four areas of functioning --i.e., whether the limitation(s) in each category were none, mild, moderate, marked or extreme.

In this case the ALJ stated—and did so only at step four -- that he considered Dr. Freedenberg's opinions in Exhibit 16-F. Dr. Freedenberg opined that claimant's presented history "was scripted and that he attempted to present himself as being more impaired than he was." (Tr. 26). The ALJ never stated what his own findings were with respect to the four areas of functioning . More importantly however, is that there was additional evidence in the record from other state agency physicians that if accepted, and unrebutted, would support the existence and extent of Mr. Lee's mental limitations, but this was not discussed by the ALJ.

For example, state agency physician Dr. Patrick Sokas completed a "PRTF" and a

"MRFCA".  (Ex. 4F; Tr. 177-184).   Dr. Sokas noted Mr. Lee's **anxiety disorder**, NOS" and

determined that Mr. Lee was "moderately limited" in his ability to "understand and remember

detailed instructions," "carry out detailed instructions," "maintain activities within a schedule,

maintain regular attendance, and be punctual within customary tolerances," "complete a normal

day and workweek without interruptions from psychologically based symptoms and to perform

at a consistent pace without an unreasonable number and length of rest periods," "accept

instructions and respond appropriately to criticism from supervisors," and "get along with

coworkers or peers without distracting them or exhibiting behavioral extremes."  (Tr. 181-

82)(emphasis added).

Regarding Mr. Lee's functional limitations, Dr. Sokas determined that Mr. Lee was

"moderately" limited in "Activities of Daily Living," "Difficulties in Maintaining Social

Functioning," and "Difficulties in Maintaining Concentration, Persistence, or Pace."  (Tr. 178).

Dr. Sokas also found that Mr. Lee had experienced "one or two" "Episodes of Decompensation,

Each of Extended Duration."  (Tr. 178).  Yet this evidence is not discussed in the ALJ's decision

and the ALJ only stated that Mr. Lee's depression was a severe impairment and failed to

adequately discuss the claimant's anxiety disorder. (Tr. 24).

20 C.F.R. § 404.1527(f) and 416.927(f) provide that "administrative law judges and the

Appeals Council are not bound by findings made by State agency or other program physicians

and psychologists,…[*however*] *they* [also] *may not ignore these opinions and must explain the*

*weight given to the opinions in their decisions.*" *See* SSR 96-6p (emphasis added).  Based on the

record before me, I cannot determine whether the ALJ considered, but rejected, this medical

evidence, or simply ignored it, in violation of the Commissioner's regulations. As such, a

"meaningful review" simply is not possible. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Doctor Sokas' findings, summarized above, contradict the ALJ's findings regarding both the existence and severity of Claimant's alleged mental impairments.  The failure to discuss this evidence goes to the very manner in which mental impairments are to be evaluated under the criteria set forth in the Regulations.  Errors such as those which occurred at step two in this case inevitably infect the ALJ's analysis at the subsequent steps, and impact the ALJ's findings at steps four and five in determining Claimant's RFC.  This was improper in light of SSR's 96-5p, 96-6p and 96-8p. The RFC assessment **must always consider and address medical source opinions.**  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. *SSR 96-8p*[1] (1996 WL 374184 *7 (S.S.A)) (Emphasis added).  The Court cannot determine whether findings are supported by substantial evidence unless the agency clearly indicates the weight given all the relevant evidence. *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984); *see also* SSR 82-62.

---

[1]     The Commissioner's own Ruling, in relevant, part states:

"[R]FC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). **In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) [FN7], and describe the maximum amount of each work- related activity the individual can perform based on the evidence available in the case record**. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."

SSR 96-8p (1996 WL 374184 **7 (S.S.A.)).

All limits on work related activities resulting from the mental impairments must be described in the mental RFC assessment.  SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A.)).  From the record before me, it is not clear from his decision whether the ALJ properly evaluated Mr. Lee's impairments and their impact on his RFC at the fourth step of the sequential evaluation. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review).  Consequently, I am unable to say whether the hypotheticals presented to the VE and the ALJ's findings at step five of the sequential evaluation are supported by substantial evidence.[2] (Tr. 67-69 ).

> The ALJ Failed to Give Proper Weight to the Opinions of the Treating and Examining Physicians in determining whether Mr. Lee was disabled

An opinion by a treating a physician is entitled to controlling weight if is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Furthermore

Records documenting Mr. Lee's mental health treatment from The Mental Health Center for the period from January 2001 to March 2005 are in the record.  (Tr. 261-69.)  In addition, there is a psychiatric evaluation report by Dr. Rose Gustilo in which she determined a GAF[5]

---

[2]Notably, there was no VE present at the second ALJ hearing in this case. Rather the ALJ refers to the testimony given at the Claimant's initial hearing where when the VE was asked by Claimant's counsel at the first administrative hearing to assume limitations relating to depression and anxiety on the moderate level the VE responded that work was not available.   (Tr. 67-69).

[5] The Global Assessment of Functioning (GAF) score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

score of 50 for Mr. Lee, a score indicating serious symptoms or serious impairment in social, occupational, or school functioning.  (Tr. 169.)

The opinions of Mr. Lee's treating physicians are entitled to great weight and may be disregarded "only if there is persuasive contradictory evidence." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983).  The ALJ in this case made reference to the diagnoses of Mr. Lee's treating physicians, but the ALJ neither set forth his evaluation of their opinions, nor explained why he gave greater weight to the evaluations of consulting physicians whose judgment was not based "on a continuing observation of the patient's condition over a prolonged period of time." *Id*.

In particular, the ALJ made no reference to the mental health records of Mr. Lee's treating physicians, and instead relied solely on one consultative psychiatric examination.  (Tr. 190-92, 214-20, 261-6925-56.)  Thus, it is impossible to determine how the opinions of treating physicians and examining physicians regarding his mental health were factored into the ALJ's determination that Mr. Lee's symptoms are neither disabling nor "entirely credible" or how the limitations found by these physicians were factored into the ALJ's decision that Mr. Lee could perform less than a full range of sedentary work .  (Tr. 26.).   The ALJ must set forth how the opinions of Mr. Lee's treating and examining physicians factored into his decision.  *See Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 19845); *see also Smith v. Schweiker*, 795 F.2d 343 (4th Cir. 1986); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).  *See also* SSR 96-9p (An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairments and is expected to be relatively rare). (1996 WL 374185 (S.S.A.))

## VI.  **Conclusion**

For the foregoing reasons, the Commissioner's decision is reversed and the case is

REMANDED.  A separate Order shall issue.


Dated:  July 30, 2009                          ___/s/_____
                                                Paul W. Grimm
                                                United States Magistrate Judge